UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| J. DOE, et al.,<br><br>      Plaintiffs,<br><br>    v.<br><br>COUNTY OF SAN BENITO,<br><br>      Defendant. | Case No. 25-cv-10237-VKD<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**<br><br>Re: Dkt. No. 2 |

Plaintiffs J. Doe and M. Roe assert claims against defendant County of Benito ("County") under 42 U.S.C. § 1983 for violation of their First Amendment rights, and under 18 U.S.C. § 2707 for violation of the Stored Communications Act. Dkt. No. 1.[1] Plaintiffs allege that in retaliation for plaintiffs' anonymous publication of a political cartoon commenting on potential security cuts at the County's behavioral health clinic, the County issued an administrative subpoena to Meta Platforms, Inc. ("Meta"), in order to obtain information identifying plaintiffs. *Id.* ¶¶ 3, 4. Plaintiffs seek injunctive relief, declaratory relief, damages, attorneys' fees, and costs. *Id.* at 7-8.

This order addresses plaintiffs' motion for a temporary restraining order ("TRO") which was filed on November 26, 2025. Dkt. No. 2. The County was provided notice of the action and the motion. The Court held a hearing on November 26, 2025 at 3:00 p.m., at which all parties appeared and had an opportunity to be heard. Dkt. No. 8. At the conclusion of the hearing, the Court indicated it would grant the motion for TRO. This order follows.

---

[1] All parties have appeared and consented to magistrate judge jurisdiction. Dkt. Nos. 5, 6.

## I. BACKGROUND

Plaintiffs are anonymous authors and publishers of Benito Beet Beat, which describes itself as a satirical news outlet operating on the social media platform Facebook. Dkt. No. 2 at 2. Benito Beet Beat claims to publish satirical commentary on politics in the County, accompanied by political cartoons about current events in the County. *Id.* at 3. On or about November 3, 2025, Benito Beet Beat published a cartoon ("Cartoon"), which is reproduced in full at Dkt. No. 2-2 at 4. *Id.* at 4. The Cartoon is captioned "Supervisors make a surprise visit to Behavioral Health and find a surprise…." *See* Dkt. No. 2-2 at 4. Text in bold at the bottom of the Cartoon states "Another crisis in the lobby!" The Cartoon depicts a portion of a room with a sign on the wall that says "Behavioral Health." It includes the image of a man in distress saying, "Voices are telling me I need to hurt a supervisor or his kids," with a woman nearby saying "We're in danger! Call security now!" Meanwhile, another woman depicted in the Cartoon is shown thinking, "We cut security because Velazquez told us to do it," referring to County Supervisor Ignacio Velazquez, while a man holding flowers is shown thinking, "Flowers work at Casa de Fruta with the mad kids." *Id.* ¶ 9. According to plaintiffs, the Cartoon is "a satirical commentary on recent events in which the San Benito County Board of Supervisors, at the urging of Supervisor Velazquez, declined to renew a company's contract to provide security at the County's behavioral health clinic, . . . yet the Board failed to ensure that a new contract for security was in place, creating the risk that no security would be available at the clinic the following week." Dkt. No. 2 at 4. The Cartoon was removed from the Benito Beet Beat Facebook page soon after publication. Dkt. No. 2-2 ¶ 11.

On November 18, 2025, the County Board of Supervisors ("Board") approved the issuance of an administrative subpoena directed to Meta "to obtain information and documentation identifying the individuals responsible for the Benito BEET Beat Facebook page." Dkt. No. 2 at 4-5. The Board's vote was premised on a finding made by the County Counsel that the Cartoon's "depiction is clearly a threat and appears to call upon others to inflict physical harm." *Id.* at 4. The County advises that it seeks to identify the persons responsible for publishing the Cartoon because it intends to obtain a civil restraining order based on the alleged threat and/or incitement

2

1    to inflict physical harm in the Cartoon.  *Id.* at 5; Nov. 26, 2025 hearing.

2    The subpoena directs Meta to produce records identifying the publishers of Benito Beet
3    Beat to the Board by December 2, 2025.  Dkt. No. 2 at 2, 5.  At the hearing, the County advised
4    that the County Sheriff has already served the subpoena on Meta.

5    **II.   LEGAL STANDARD**

6    The standard for issuing a temporary restraining order is identical to the standard for
7    issuing a preliminary injunction.  *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d
8    832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp.
9    1320, 1323 (N.D. Cal. 1995).  An injunction is a matter of equitable discretion and is "an
10   extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled
11   to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

12   A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to
13   succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary
14   relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public
15   interest."  *Winter*, 555 U.S. at 20.  "[I]f a plaintiff can only show that there are serious questions
16   going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary
17   injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the
18   other two *Winter* factors are satisfied."  *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942
19   (9th Cir. 2014) (internal quotation marks and citations omitted).

20   **III.  DISCUSSION**

21   Plaintiffs ask the Court to issue an order requiring the County to withdraw the subpoena to
22   Meta, and restraining the County from pursuing or enforcing the subpoena, or taking other action
23   to identify the authors and publishers of Benito Beet Beat.  The Court finds that plaintiffs have
24   satisfied the requirements for issuance of a TRO, and therefore grants their motion for a TRO, for
25   the reasons explained below.

26       **A.   *Winter* Factors**

27           **1.   Likelihood of Success on the Merits**

28   The Court begins its analysis by considering plaintiffs' showing on the first *Winter* factor,

likelihood of success on the merits, with respect to plaintiffs' First Amendment claim. The First Amendment "safeguards an individual's right to participate in the public debate through political expression and political association." *McCutcheon v. Fed. Election Com'n*, 572 U.S. 185, 203 (2014). First Amendment protections extend to anonymous speech, including anonymous online speech. *Agdal v. X Corp. In Interest to Twitter, Inc.*, No. 24-mc-80266-JCS, 2025 WL 81594, at *3 (N.D. Cal. Jan. 13, 2025).

In order to demonstrate a First Amendment violation, a plaintiff must demonstrate that by its actions the defendant deterred or chilled the plaintiff's political speech and such deterrence was a substantial or motivating factor in the defendant's conduct. *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999). "True threats of violence are outside the bounds of First Amendment protection and punishable as crimes." *Counterman v. Colorado*, 600 U.S. 66, 69 (2023).

Based on the record presented, the Court finds that plaintiffs have shown they are likely to succeed on the merits of their claim that the Cartoon is satirical political commentary, critical of a decision made by the local government—i.e., political speech that is protected by the First Amendment. While the Cartoon is hyperbolic and provocative, plaintiffs are likely to succeed in showing that it cannot reasonably be construed as a "true threat" of violence against any individual or the Board collectively, or as an incitement of others to commit violence. Rather, the Cartoon appears to raise concerns about the risk of violence created by the Board's decision regarding security at the County's behavioral health clinic. *See Counterman*, 600 U.S. at 74 ("True threats are serious expressions conveying that a speaker means to commit an act of unlawful violence.") (internal quotation marks omitted).

Plaintiffs have demonstrated that they are likely to succeed on the merits of the First Amendment claim.

### 2. Irreparable Harm

Plaintiffs also have established that they are likely to suffer irreparable harm if a TRO is not granted. As plaintiffs note, and the County conceded at the hearing, once plaintiffs' identities are disclosed pursuant to the subpoena, they will lose their anonymity. The loss of anonymity is

itself a harm that cannot be repaired. *Rancho Publ'ns v. Superior Ct.*, 68 Cal. App. 4th 1538, 1541 (Cal. Ct. App. 1999) ("Anonymity, once lost, cannot be regained[.]"). In addition, plaintiffs attest that the loss of anonymity will cause them reputational and professional harm. *See* Dkt. No. 2-2 ¶ 8; Dkt. No. 2-3 ¶ 4.

Moreover, plaintiffs have shown that the County's use of its subpoena authority to obtain plaintiffs' identities in aid of a contemplated action for a civil restraining is likely to have a chilling effect on their political speech. *See White v. Lee*, 227 F.3d 1214, 1228 (2000) (finding that investigation by government officials of plaintiffs' identities "unquestionably chilled the plaintiffs' exercise of their First Amendment rights"). Because the subpoena in question is an administrative subpoena issued directly by the Board for records and information held by a third-party service provider, plaintiffs appear to have no opportunity to object to or move to quash the subpoena in some other forum.

Plaintiffs have shown a likelihood of irreparable harm.

### 3. Balance of Equities

The balance of equities favors issuance of a TRO. As discussed, plaintiffs may suffer irreparable harm if the TRO does not issue, and do not appear to have other available means to challenge the subpoena. On the other hand, plaintiffs have removed the Cartoon from Benito Beet Beat, and therefore, the alleged threat or incitement to violence the County contends the Cartoon presents has been removed from publication. The County's ability to proceed with an action seeking a civil restraining order will not be materially impeded by a TRO that permits the Court to receive additional briefing from all parties during the short interval from the date of this order to the date of the hearing on plaintiffs' anticipated motion for a preliminary injunction.

### 4. Public Interest

The public interest likewise favors issuance of a TRO. Plaintiffs have demonstrated that their First Amendment rights are at risk, and the public has an interest in the protection of those rights. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.").

**B.     Security**

Rule 65(c) of the Federal Rules of Civil Procedure provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted) (italics in original).  "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id*.

The Court finds that there is no realistic likelihood of harm to the County, or the possibility that the County will incur damages, during the pendency of a TRO.  During the hearing, the County acknowledged as much.  Accordingly, the Court finds it appropriate to issue a TRO without requiring plaintiffs to provide security.

**IV.   CONCLUSION**

For the foregoing reasons, plaintiffs' motion for a TRO is granted.  This ruling reflects only the Court's determination that at this stage of the proceedings, plaintiffs have met the standard for a TRO.

**V.    ORDER**

It is hereby ordered that, for a period of 14 days from the date of this order, until **December 10, 2025 at 3:00 p.m.**, and pending further hearing before this Court, the County is immediately restrained and enjoined as follows:

1.     The County shall withdraw the administrative subpoena denominated No. 2025-01 ("Subpoena") issued by the County to Meta.

2.     The County and its officers, agents, servants, employees, attorneys, and anyone in active concert or participation with any of the foregoing persons are hereby restrained and enjoined from pursuing or enforcing the Subpoena or taking any other action that seeks to identify plaintiffs as authors and publishers of Benito Beet Beat.

6

3. The County shall immediately use all reasonable means to provide a copy of this order to Meta and to inform Meta that plaintiffs' TRO has been granted.

4. The County shall file proof of its compliance with paragraph 3 no later than **November 28, 2025, 4:00 p.m**.

A hearing to show cause shall be held in Courtroom 2, 5th Floor, 280 South First Street, San Jose, California 95113 on **December 10, 2025 at 10:00 a.m.** for the Court to determine whether to issue a preliminary injunction requiring the County to withdraw the Subpoena and prohibiting the County and its officers, agents, servants, employees, attorneys, and anyone in active concert or participation with any of the foregoing persons from pursuing or enforcing the Subpoena or taking any other action that seeks to identify plaintiffs as authors and publishers of Benito Beet Beat pending final judgment or resolution in this action.

Plaintiffs may file any additional briefs or evidence in support of a preliminary injunction by December 1, 2025. Defendant shall file any opposition by December 5, 2025. Plaintiffs may file a reply by December 8, 2025.

**IT IS SO ORDERED.**

Dated: November 26, 2025

Virginia K. DeMarchi
United States Magistrate Judge

7